CASE LOMBARDI & PETTIT
A Law Corporation

| MICHAEL L. LAM | 4260-0 |
| HARRISON K. GOO | 9753-0 |

737 Bishop Street, Suite 2600
Pacific Guardian Center – Mauka Tower
Honolulu, Hawaii 96813
Telephone: (808) 547-5400
Facsimile: (808) 523-1888
Email: MLL@caselombardi.com
Email: HKG@caselombardi.com

Attorneys for Plaintiff
**RENEAU C. KENNEDY, Ed.D**

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| RENEAU C. KENNEDY, Ed.D<br><br>Plaintiff,<br><br>vs.<br><br>VEE LEE aka VOEUTH LAY, JOHN DOES 1-15; JANE DOES 1-15; DOE ALIASES 1-100<br><br>Defendants. | CIVIL NO.: 1:20-cv-563<br>(15 U.S.C. §§ 1125 and 1831)<br><br>**VERIFIED COMPLAINT; EXHIBITS "A" – "R"; VERIFICATION; SUMMONS** |

## <u>VERIFIED COMPLAINT</u>

Plaintiff RENEAU C. KENNEDY, Ed.D ("Dr. Kennedy" or "Plaintiff"), by

and through her attorneys, Case Lombardi & Pettit, alleges and avers as follows:

## JURISDICTION AND VENUE

1.     This is a civil action under, among others, 15 U.S.C. §§ 1114, 1115, 1117, 1125 and 8131 and Hawaii Revised Statutes ("HRS") §§ 480-2 and 480-13 seeking injunctive relief and damages against Defendant VEE LEE aka VOEUTH LAY ("Defendant Lee") and anyone acting by, through or under her for cyberpiracy and violations of the Anticybersquatting Consumer Protection Act (the "ACPA"). Defendant Lee registered at least three separate domain names with the bad faith intent to profit therefrom.  This registration and her subsequent actions, have resulted in the substantial diminution in value of Dr. Kennedy's trademarks and registered marks, and caused and continue to cause her substantial emotional distress.

2.     This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, based on Defendant Lee's violation of 15 U.S.C. §§ 1125 and 8131.

3.     Material events underlying the matters referred to above occurred, and the parties have conducted activities and business within the jurisdiction of the United States District Court for the District of Hawaii.

4.     Venue in the District of Hawaii is proper under 28 U.S.C. §1391(a) and (c) because events and transactions giving rise to this action occurred in the State of Hawaii.

## PARTIES

5.      Dr. Kennedy is a resident of, and domiciled in the State of Hawaii.

6.      Defendant Vee Lee aka Voeuth Lay ("Defendant Lee") is a resident of and domiciled in the state of Hawai'i, and is a citizen of Hawai'i.

7.      Defendant Lee has used various aliases and/or doe identities in connection with her unlawful conduct described below  including, but not limited to, "Aloha Snax", "Jessica McBride" and "Eliza Rosenberg" (collectively,  the "Aliases").  Additional Aliases shall be further identified as this matter progresses.

## FACTS COMMON TO ALL COUNTS

### Dr. Kennedy's Practice

8.      Dr. Kennedy is a clinical, forensic and neuropsychologist who has been practicing in the field of psychology since 1994.

9.      Dr. Kennedy has been in private practice in Hawaii as a clinical and forensic neuropsychologist since 1997.

10.     Attached hereto as Exhibit "A", is a true and correct copy of Dr. Kennedy's curriculum vitae.

11.     From 2003-2006, Dr. Kennedy was the Forensic Chief of the Hawaii Department of Health's Adult Mental Health Division where she oversaw all training and monitoring of state and independent forensic evaluations, policies and procedures for Courts and Corrections and for all forensic mental health.

12.     Dr. Kennedy has been listed as an independent court examiner for sanity panels and custody evaluations in the State of Hawaii since 2006.

13.     From 2006-2008, Dr. Kennedy was the Mental Health Administrator for the State of Hawaii Department of Public Safety, where she oversaw all policies, procedures and metal health practices in the State of Hawaii correctional system.

## Family Court Proceedings

14.     Dr. Kennedy was appointed as a custody evaluator by the Family Court of the First Circuit, State of Hawaii (the "Family Court") in the matter of Vee Lee vs. Scott Alan Jones ("Mr. Jones"), FC-D No. 19-1-0041 (the "Custody Matter"), on or about June 14, 2019, to issue a custody report in connection with the instant proceeding.

15.     Attached hereto as Exhibit "B", is a true and correct copy of that certain Order Appointing Custody Evaluator in the Custody Matter,

16.     This position is a quasi-judicial position.

17.     Dr. Kennedy's custody report was issued to the Family Court on August 22, 2019 (the "Report").

18.     On September 10, 2019, a one-day trial was held before the Honorable John Bryant in the State of Hawaii on the issue of temporary custody in the Custody Matter (the "One Day Trial").

19.     Dr. Kennedy testified as an expert witness at this one-day trial.

20.    After considering Dr. Kennedy's testimony, among others, on September 23, 2019, Judge Bryant issued an order awarding temporary sole legal and physical custody of Defendant Lee's and Mr. Jones' three children (collectively, the "Children") to Mr. Jones in Indiana.

21.    The Children have been living in Indiana with Mr. Jones for more than a year since Judge Bryant issued his order.

22.    Upon information and belief, a trial on the final divorce proceedings which includes, but is not limited to the issues of physical custody, legal custody, child support, and visitation either has been or will be scheduled for some time in early 2021 (the "Final Trial").

23.    Dr. Kennedy is scheduled to appear as an expert witness at the Final Trial.

### Defendant's History of Cyberstalking, Harassment and Cyberbullying

24.    At the conclusion of her testimony at the September 10, 2019 one-day trial, Dr. Kennedy had no further contact or communication with Defendant Lee until October 26, 2020.

25.    Beginning October 26, 2020, presumably in anticipation of the upcoming trial date, Defendant Lee began a deliberate, malicious and targeted campaign of online attacks, harassment, and retaliation against Dr. Kennedy.

26.     These online attacks occurred on numerous platforms including, but not limited to, email, Instagram, facebook, google, WebMD, Vitals, Youtube and others through not just Defendant Lee's personal accounts, but also through one or more of her Aliases.

27.     Unbeknownst to Dr. Kennedy, Defendant Lee had been planning and anticipating this since July of 2020.

28.     Defendant Lee's malicious online conduct towards Dr. Kennedy was not the first time that Defendant Lee has engaged in a systematic, calculated and unending campaign of cyberstalking, harassment and cyberbullying, with restraining orders prohibiting similar conduct being issued and entered in connection with trial in Indiana in 2013.

29.     Further, in late 2018, Defendant Lee began stalking Mr. Jones and others.

30.     Upon information and belief, in February of 2019, Defendant Lee began posting false, slanderous and deliberately inflammatory messages to the Facebook page of Eleven Fifty Academy, where Mr. Jones is the president.

31.     Upon information and belief, such false, slanderous and deliberately inflammatory messages included the statement that Defendant Lee and Mr. Jones were still married, that Mr. Jones' new fiancé did not want Defendant Lee and Mr.

Jones to communicate, and that Defendant Lee needed to reach Mr. Jones to speak with him about their children.

32.    Upon information and belief, as a result of Defendant Lee's deliberate and malicious conduct, in March or April of 2019, the Family Court entered an order prohibiting Defendant Lee from contacting Mr. Jones and/or any employees of Eleven Fifty Academy, and from posting any negative information about Mr. Jones on social media.

33.    Upon information and belief, notwithstanding the Family Court's express order from March or April of 2019, Defendant Lee continued her campaign of cyberstalking, harassment, and cyberbullying against both Mr. Jones as well as his fiancé, unabated.

34.    Upon information and belief, this included the creation of the Instagram accounts @scottjonesmistress and @mrsscottjones, as well as the hashtags #Elevenfiftyacademy and #Scottjones with the specific intent of drawing attention to her false, defamatory, and malicious accusations against them.

35.    Upon information and belief, this also included Defendant Lee continuing to interact with Eleven Fifty Academy's social media accounts including, in one example, commenting on its Instagram account that "the President Scott Jones has to borrow money from his mistress to fund this company".

36.     On October 26, 2020, Defendant Lee sent an email to Dr. Kennedy accusing her of being "a predator" …  "the predator of Portlock".  This email went on to threaten Dr. Kennedy that "by the time I'm done, you will be known as the Portlock Predator", and that Defendant Lee "won't rest until that is known."

37.     Attached hereto as Exhibit "C", is a true and correct copy of Defendant Lee's October 26, 2020 email to Dr. Kennedy.

38.     Upon information and belief, on October 27, 2020, Defendant Lee sent an email to the Windward Sunrise Rotary Club (the "Rotary Club"), accusing Dr. Kennedy of lying, of being "a predator", and stating that she "should not be practicing".  The email concluded by referring to Dr. Kennedy as "the Portlock Predator".

39.     Attached hereto as Exhibit "D", is a true and correct copy of Defendant Lee's October 27, 2020 email to the Rotary Club, which was forwarded to Dr. Kennedy that same day.

40.     Later that same day, Defendant Lee sent an email to Dr. Kennedy directly, advising her that "reneaukennedy.com, drreneaukennedy.com and portlockpredator.com are all registered and ready to be used".   The subject line to this email was "reneaukennedy.com."

41.     Attached hereto as Exhibit "E", is a true and correct copy of Defendant Lee's first October 27, 2020 email to Dr. Kennedy.

42.     Consistent with her direct threats to Dr. Kennedy, Defendant Lee in fact registered reneaukennedy.com, drreneaukennedy.com and portlockpredator.com (collectively, the "Domains").

43.     Attached hereto collectively as Exhibit "F", is a true and correct copy of the domain registration data lookup for the Domains.

44.     Finally, Defendant Lee sent a second email to Dr. Kennedy that day, advising her that "in just 5 minutes, I was able to secure all the necessary social media accounts to accompany the domains to show more credibility and for branding purposes".  Defendant Lee made it clear once again that she "won't rest until you are done".

45.     Attached hereto as Exhibit "G", is a true and correct copy of Defendant Lee's second email to Dr. Kennedy on October 27, 2020.

46.     Consistent with her direct threats to Dr. Kennedy, Defendant Lee registered the @portlockpredator and @reneaukennedy Instagram profiles (collectively, the "Social Profiles").

47.     Defendant Lee began posting on the @portlockpredator account almost immediately after its creation.

48.     For example, on October 27, 2020, Defendant Lee wrote "you're a vile woman who should not be practicing and I won't rest until that is known."

49.   Attached hereto as Exhibit "H", is a true and correct copy of Defendant Lee's October 27, 2020 post to the @portlockpredator account.

50.   Also, on October 27, 2020, Defendant Lee accused Dr. Kennedy of lying under oath "about multiple things that had to do with my custody battle against my ex-husband," through the @portlockpredator Instagram account.

51.   Attached hereto collectively as Exhibit "I", are true and correct copies of Defendant Lee's October 27, 2020 posts to the @portlockpredator account.

52.   On October 29, 2020, Defendant Lee wrote on Dr. Kennedy's RateMD profile that "she is not genuine, very soulless. She believes she's superior because she's white, but she's on our stolen land."

53.   On November 1, 2020, Defendant Lee once again took to the @portlockpredator Instagram account to accuse Dr. Kennedy of lying under oath.

54.   Attached hereto collectively as Exhibit "J", is a true and correct copy of Defendant Lee's November 1, 2020 posts to the @portlockpredator account.

55.   On November 6, 2020, Defendant Lee updated the @portlockpredator account, accusing Dr. Kennedy of "being bought" by Mr. Jones.

56.   Attached hereto collectively as Exhibit "K", is a true and correct copy of Defendant Lee's November 6, 2020 posts to the @portlockpredator account.

57.   On November 8, 2020, Defendant Lee made over 25 comments on Dr. Kennedy's CUTV interview on YouTube directing other commenters to the

Reneaukennedy.com domain for "the truth", claiming "she lies in court if you're rich and white," and "she abuses kids."

58.   On November 10, 2020, Defendant Lee posted to the @portlockpredator account that "that woman [Dr. Kennedy] is not a good person. She doesn't have any children of her own, and God knows no man wants to procreate with her…but yet she gets to decide what a family is? She actually lied in court. It's a felony."

59.   On November 14, 2020, Defendant Lee called Dr. Kennedy a "horrible, evil person" on the @portlockpredator account.

60.   On November 17, 2020, Defendant Lee wrote a Google Review for Dr. Kennedy stating "she is unethical in her practice and will lie under oath to get what she wants."

61.   On November 26, 2020, Defendant Lee called Dr. Kennedy "a disgusting human being," and accused Dr. Kennedy of being biased in her prior custody evaluation on the @portlockpredator account.

62.   Attached hereto collectively as Exhibit "L", are a true and correct copies of Defendant Lee's updates to the @portlockpredator Instagram account between November 13, 2020 and November 30, 2020.

63.    On December 7, 2020, Defendant Lee created a petition on Change.org that claimed, among other things, that Dr. Kennedy lied in court and that she "despises my Cambodian culture. She has commented we are 'dirty people'."

64.    Defendant Lee has also used avatars, cartoons and photos of Dr. Kennedy, and has published oral testimony from the Custody Matter.

65.    These avatars, cartoons and photos of Dr. Kennedy have been posted to the Social Profiles.

66.    These avatars, cartoons and photos have been placed on signs, which have been posted to the window of Defendant Lee's home.

67.    These signs have also been posted to the window of Defendant Lee's vehicle.

68.    Defendant Lee has falsely accused Dr. Kennedy of, among others, perjury, fraud, bias, racism, misrepresentation, and breach of her professional duties and obligations.  Each and every one of these defamatory allegations is false and unsupported by even a shred or modicum of actual evidence.

69.    Defendant Lee's knowing, intentional and malicious actions have caused significant emotional distress to Dr. Kennedy, and has resulted in irreparable damage to her personal and professional reputation.

## The TRO and Restraining Order

70.     As a result of the aforementioned cyberstalking, harassment, and cyberbullying, on October 30, 2020, the State of Hawaii's District Court of the First Circuit, Honolulu Division granted Dr. Kennedy's Petition for an Ex Parte Temporary Restraining Order and for Injunction Against Harassment against Defendant Lee (the "TRO").

71.     The TRO enjoined Defendant Lee from contacting, threatening, telephoning, or physically harassing Dr. Kennedy.

72.     The hearing on the TRO, to determine whether or not the issuance of a permanent injunction was warranted, was set for Friday, November 13, 2020 (the "TRO Hearing").

73.     The TRO was served on Defendant Lee on or about November 9, 2020.

74.     Despite having received, and having knowledge of the TRO, Defendant Lee nevertheless continued to violate the same.

75.     Attached hereto collectively as Exhibit "M", are true and correct copies of Defendant Lee's fake reviews on Dr. Kennedy's profiles on various websites including, but not limited to, Google Reviews, WebMD, and RateMD.

76.     The TRO Hearing proceeded as scheduled on November 13, 2020.

77.     At the TRO Hearing, which was attended by Defendant Lee, she objected to providing Dr. Kennedy with "a complete list of all websites, social media

forums, professional rating sites, and/or other forms of social media communication concerning and/or relating to [Dr. Kennedy] that she, or any third person on her behalf, created, set up and/or established".

78.   Despite this objection, Defendant Lee admitted and acknowledged, in open court, that she will be "adding a lot more websites" and that the list "will still be growing".

79.   Ultimately, as a result of Defendant Lee's ongoing and unabated conduct, at the TRO Hearing the Court deemed that an Injunction Against Harassment (the "Restraining Order") was warranted.

80.   The Restraining Order, issued on November 13, 2020, barred Defendant Lee from, among others, contacting, threatening or physically harassing Dr. Kennedy for a period of three (3) years.  "Contact" as utilized in the Restraining Order included, but was not limited to, telephone, cell phone, mail, facsimile, pager, electronic mail, internet, text messages, social networking sites, etc.

81.   Once again, despite the issuance of the Restraining Order, Defendant Lee proceeded unabated, her willful, wanton and malicious disregard for the same, with her online postings and attacks against Dr. Kennedy.

82.   Attached hereto collectively as Exhibit "N", are true and correct copies of Defendant Lee's updates of the Social Profiles, each of which was done

subsequent to the effective date of the Restraining Order, and each of which violates the same.

83.    Attached hereto collectively as Exhibit "O", are true and correct copies of Defendant Lee's postings on the internet, each of which was done subsequent to the effective date of the Restraining Order, and each of which violates the same.

84.    On November 16, 2020, the following four (4) trade names were registered by Dr. Kennedy: (1) Reneau Kennedy, (2) Reneau C. Kennedy, (3) Dr. Reneau Kennedy and (4) Dr. Reneau C. Kennedy (collectively, the "Marks").

85.    Attached hereto collectively as Exhibit "P", are true and correct copies of the registration information for the Marks.

86.    As of the date of the instant Complaint, in addition to regularly updating the Social Profiles, Defendant Lee has also created a website under the reneaukennedy.com domain (the "Website").

87.    The Website includes pictures of herself, what appear to be three children, and numerous slanderous, inflammatory, defamatory, false and fraudulent statements about Dr. Kennedy.

88.    Attached hereto as Exhibit "Q", are true and correct copies of screenshots of the Website, including internal pages relating to Dr. Kennedy, taken by Dr. Kennedy on or about December 11, 2020.

89.     The Website also includes a link to a petition on change.org whereby, among others, Defendant Lee once again falsely and fraudulently accuses Dr. Kennedy of perjury (the "Petition").

90.     Attached hereto as Exhibit "R", is a true and correct copy of the Petition, downloaded by Dr. Kennedy on or about December 11, 2020.

91.     As of the date of Dr. Kennedy's download, three days after the Petition was started, it appears that there are 250 "supporters" thereof.

## <u>COUNT I</u>
### (Violation of Cyberpiracy Protections for Individuals, 15 U.S.C. § 8131)

92.     Dr. Kennedy realleges and incorporates by this reference, the allegations in paragraphs 1 – 91 above, as though more fully set forth herein.

93.     On October 2, 2020, Defendant registered the domain portlockpredator.com without Dr. Kennedy's knowledge or consent.

94.     On October 27, 2020, Defendant registered the domain Reneaukennedy.com without Dr. Kennedy's knowledge or consent.

95.     On October 27, 2020, Defendant registered the domain Drreneaukennedy.com without Dr. Kennedy's knowledge or consent.

96.     At the time that the Domains were registered, any and all marks relating to "Reneau Kennedy" were and are distinctive and unique to Dr. Kennedy, a longtime psychology practitioner whose brand and reputation were built upon her name.

97.     The emails sent from Defendant Lee to Dr. Kennedy on October 26 and 27 make it clear that registration of the aforementioned Domains was done without Dr. Kennedy's consent and with the specific intent for Defendant Lee to profit therefrom.

98.     Specifically, by willfully, wantonly, and maliciously defaming and attacking Dr. Kennedy online, including through utilization of the Domains, Defendant Lee intended to not only irreparably tarnish her reputation as a practitioner, but also to discredit her as a witness in the pending Family Court Matter in 2021.

99.     Defendant Lee knew that Dr. Kennedy's truthful testimony, would be incredibly damaging to her pending case before the Family Court in 2021.

100.    Defendant Lee also knew that the only way to limit such damage would be to either substantially tarnish Dr. Kennedy's reputation or prevent her from testifying entirely.

101.    If Dr. Kennedy's reputation were damaged, or if she were to refuse to testify, Defendant Lee would directly profit through not only the potential gaining custody of her children, but also through the child support payments resulting therefrom.

102.    Additionally, Defendant Lee intended to further directly profit through the registration and use of the Domains through the solicitation and receipt of monetary donations therefrom.

103.    Unless the Domains are either forfeited, cancelled or transferred to Dr. Kennedy, Defendant Lee will in fact profit, as described hereinabove.

104.    Pursuant to the foregoing, this Court should award injunctive relief to Dr. Kennedy including, but not limited to, transferring ownership of the Domains to her, and dismantling and/or removing any and all comments created through her campaign of online harassment.

## COUNT II
### (Violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125)

105.    Dr. Kennedy realleges and incorporates by this reference, the allegations in paragraphs 1 – 104 above, as though more fully set forth herein.

106.    As noted above, at the time that the Domains were registered, any and all marks relating to Dr. Kennedy were distinctive to her.

107.    Initially, any user who accessed the Domains would be re-directed to Dr. Kennedy's google reviews, where Defendant Lee had been posting intentionally false, defamatory and negative comments, including through one or more of her Aliases.

108.   Currently, however, a webpage has been created and uploaded to the Domains, containing pictures of Defendant Lee's children, court documents, and substantial false, defamatory and malicious statements about Dr. Kennedy.

109.   The Domains were registered by Defendant Lee with the clear bad faith intent to profit therefrom, and/or to harm, tarnish, disparage and destroy the goodwill built up in Dr. Kennedy's Marks.

110.   More specifically, Defendant Lee knew, as described more fully in the emails she sent to Dr. Kennedy, that Dr. Kennedy's reputation was a part of her brand and trademark.

111.   As described in the preceding section, Defendant Lee also knew that she stood to directly profit from the tarnishment of Dr. Kennedy's reputation due to her status as a witness set to testify against her in the Family Court Matter, as well as through the solicitation of funds therefrom through the use of the Domains.

112.   Unless the Domains are either forfeited, cancelled, dismantled, or transferred to Dr. Kennedy, Defendant Lee will in fact profit, as described hereinabove.

113.   Pursuant to the foregoing, this Court should award injunctive relief to Dr. Kennedy including, but not limited to, transferring ownership of the Domains to her immediately, as well as requiring such Domains, and any websites connected thereto, to be dismantled and taken down.

## COUNT III
### (Federal Trademark Infringement)

114.   Dr. Kennedy realleges and incorporates by this reference, the allegations in paragraphs 1 – 113 above, as though more fully set forth herein.

115.   Defendant Lee's use of the Domains, the Social Profiles and the Marks is likely to cause confusion, deception, and mistake by creating the false and misleading impression that they are associated with, or connected to Dr. Kennedy in any way.

116.   Defendant Lee's use of the Domains, Social Profiles and the Marks are in fact causing, and are intended to cause, a likelihood of confusion and deception of members of the public and, additionally, injury to and tarnishment of Dr. Kennedy's goodwill and reputation.

117.   Defendant Lee's actions demonstrate an intentional, willful, and malicious intent to profit from the goodwill associated with Dr. Kennedy's Marks and trade name, causing great and irreparable harm to Dr. Kennedy.

118.   Defendant Lee has caused, and is likely to continue causing, substantial injury to the public and to Dr. Kennedy.  Dr. Kennedy is, therefore, entitled to injunctive relief and to recover any of Defendant Lee's profits, actual damages, costs and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117.  This includes an accounting of any and all funds received by Defendant Lee arising from and/or relating to her use of the Domains, the Social Profiles, or the Marks.

<u>**COUNT IV**</u>
**(Federal Unfair Competition)**

119.   Dr. Kennedy realleges and incorporates by this reference, the allegations in paragraphs 1 – 118 above, as though more fully set forth herein.

120.   Defendant Lee's use of the Domains, the Social Profiles and the Marks has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression of Dr. Kennedy and her business.

121.   Defendant Lee has made false representations, false descriptions, and false designations of, on or in connection with the Domains in violation of 15 U.S.C. § 1125(a).   These false representations, false descriptions and false designations have caused, and will continue to cause, a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Dr. Kennedy's goodwill and reputation, for which she has no adequate remedy at law.

122.   Defendant Lee's actions demonstrate an intentional, willful, and malicious intent to profit from the goodwill associated with Dr. Kennedy's Marks, to the great and irreparable injury of Dr. Kennedy.

123.   Defendant Lee's conduct has caused, and shall continue causing, substantial injury to the public and to Dr. Kennedy.   Dr. Kennedy is, therefore, entitled to injunctive relief and to recover any of Defendant Lee's profits, actual damages, costs and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116 and 1117.   This includes an accounting of any and all funds received by Defendant Lee

arising from and/or relating to her use of the Domains, the Social Profiles, or the Marks.

## COUNT V
### (State Unfair and Deceptive Trade Practices)

124.   Dr. Kennedy realleges and incorporates by this reference, the allegations in paragraphs 1 – 123 above, as though more fully set forth herein.

125.   Defendant Lee is and has been passing herself off as Dr. Kennedy through her use of the Domains, the Social Profiles and the Marks, causing a likelihood of confusion or misunderstanding as to the source of the information presented, and otherwise damaging the public,

126.   Defendant Lee's conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of HRS § 480-2.

127.   Defendant Lee's unauthorized and malicious use of Dr. Kennedy's Marks in the Domains and social profiles have caused, and is likely to continue to cause substantial injury to the public and to Dr. Kennedy.  Dr. Kennedy is, therefore, entitled to injunctive relief and to recover damages including punitive damages, costs and reasonable attorneys' fees.

128.   For the foregoing reasons, Dr. Kennedy is also entitled to an award of trebled damages HRS § 480-13.

## COUNT VI
### (Common Law Trademark Infringement and Unfair Competition)

129.   Dr. Kennedy realleges and incorporates by this reference, the allegations in paragraphs 1 – 128 above, as though more fully set forth herein.

130.   Defendant Lee's actions constitute common law trademark infringement and unfair competition, and have created a likelihood of confusion to the irreparable injury of Dr. Kennedy.

131.   By her own admission, Defendant Lee acted with full knowledge of Dr. Kennedy's statutory and common law right to her own Marks, and with the express intention of causing confusion among the public due to her intentional conduct relating thereto.

132.   Defendant Lee's actions demonstrate an intentional, willful and malicious intent to trade on the goodwill associated with Dr. Kennedy's name and marks, to the great and irreparable injury of Dr. Kennedy.

133.   As a result of Defendant Lee's actions, Dr. Kennedy has been damaged in an amount not yet determined or ascertainable.  At a minimum, Dr. Kennedy is entitled to injunctive relief prohibiting any further action or use by Defendant Lee of the Domains, the Social Profiles and the Marks.

134.   Further, in light of the deliberate and malicious use of Dr. Kennedy's Marks, Defendant's history of this type of behavior, and the need to deter such conduct in the future, Dr. Kennedy is additionally entitled to punitive damages.

## COUNT VII
### (False Light)

135.   Dr. Kennedy realleges and incorporates by this reference, the allegations in paragraphs 1 – 134 above, as though more fully set forth herein.

136.   Defendant Lee's use of the Domains, Social Profiles and the Marks are intended to proffer a completely false impression of Dr. Kennedy, and her skill and competency as a clinical, forensic and neuropsychologist.

137.   The intentional proffer of a false impression of professional skill and competency would be highly offensive to a reasonable person.

138.   The intentional proffer of a false impression of Dr. Kennedy's professional skill and competency is highly offensive to Dr. Kennedy, and the goodwill she has built up as an outstanding practitioner in her field for the last two decades.

139.   Defendant Lee knew and should have known that the impressions she was propagating online, including but not limited to on the Domains and the Social Profiles, were completely and totally false.

140.   Defendant Lee has admitted numerous times that her intent was, in fact, to spread these false and defamatory allegations about Dr. Kennedy with the hope that she would no longer be able to continue practicing.

141.   Dr. Kennedy has suffered damages as a result of Defendant Lee's knowing, intentional, and malicious publication of false statements about her online, including but not limited to on the Domains as well as on the Social Profiles.

142.   Defendant Lee is liable to Plaintiff for special and general damages, in amounts to be proven at trial.

143.   Defendant Lee should also be enjoined from propagating any further false information and/or accusations about Dr. Kennedy including, but not limited to, being enjoined from discussing, referencing, or otherwise interacting with Dr. Kennedy on any public medium, venue or platform, through either her personal profile and/or any of her Aliases.

## COUNT VIII
### (Defamation)

144.   Dr. Kennedy realleges and incorporates by this reference, the allegations in paragraphs 1 – 143 above, as though more fully set forth herein.

145.   Each and every one of Defendant Lee's postings directed at Dr. Kennedy contained false and defamatory statements.

146.   These false and defamatory statements concerning Dr. Kennedy are intentionally published to third parties (including the public at large) and such publication was not subject to any privilege.

147.   Defendant Lee knowingly, intentionally, and maliciously made and published false and defamatory statements concerning Dr. Kennedy to third parties

(including the public at large) to deliberately harm her reputation and economic interests.

148.   As a result of Defendant Lee's knowing, intentional, and malicious publication of false and defamatory statements concerning Dr. Kennedy to third parties (including the public at large), Dr. Kennedy's reputation and economic interests are in fact harmed.

149.   The false and defamatory statements made by Defendant Lee are reasonably susceptible to defamatory meaning and have harmed Dr. Kennedy's reputation so as to lower it in the estimation of the community and/or to deter third parties from associating or dealing with Dr. Kennedy in either a professional or personal capacity.

150.   Dr. Kennedy has suffered damages as a result of Defendant Lee's knowing, intentional, and malicious publication of false and defamatory statements about Dr. Kennedy to third parties (including the public at large).

151.   Defendant Lee is liable to Plaintiff for special and general damages, in amounts to be proven at trial.

152.   Defendant Lee should also be enjoined from any further defamatory or slanderous conduct including, but not limited to, being enjoined from discussing, referencing, or otherwise interacting with Dr. Kennedy on any public medium, venue or platform.

## COUNT IX
### (Punitive Damages)

153.   Dr. Kennedy realleges and incorporates by this reference, the allegations in paragraphs 1 – 152 above, as though more fully set forth herein.

154.   As a result of Defendant Lee's acts and wrongful conduct described above, she acted intentionally, willfully, wantonly, oppressively, or with gross negligence, and is therefore liable to Dr. Kennedy for punitive damages in an amount to be awarded at trial herein.

## CONCLUSION

WHEREFORE, Dr. Kennedy prays that this Court:

1.   That Defendant Lee, and all of her agents, representatives, successors, assigns, attorneys', and all others persons or entities acting for, with, by, through or under her, or in concert and/or participation with her, be enjoined from:

   a.   posting or updating any Instagram account (including, but not limited to the @portlockpredator and @reneaukennedy accounts) that she and/or anyone working at her instruction and/or on her behalf, created to defame, attack, intimidate, harass or threaten Dr. Kennedy;

   b.   registering any other domain names with the bad faith intent of defaming, attacking, intimidating, harassing, retaliating against or threatening Dr. Kennedy;

   c.   registering any accounts on any online medium, venue or platform with the bad faith intent of defaming, attacking, intimidating, harassing, retaliating against or threatening Dr. Kennedy; and

      d.    tagging, referencing or linking to any web presence that Dr. Kennedy may have.

2.    Ordering that ownership and control over the Domains be immediately transferred and assigned over to Dr. Kennedy.

3.    Ordering the dismantling of the Domains, and any web page connected therewith.

4.    Ordering Defendant Lee and/or anyone working at her instruction and/or on her behalf to remove any and all postings in any medium, venue or platform including, but not limited to any social media account and/or website defaming, harassing, threatening and retaliating against Dr. Kennedy.

5.    That Defendant Lee be compelled to account to Dr. Kennedy, for any and all monies derived from Defendant Lee's use of the Domains, the social profiles and any other goods or services bearing Dr. Kennedy's Marks.

6.    Actual damages for Defendant Lee's conduct including for the severe emotional distress suffered by Dr. Kennedy as a result of the same.

7.    That any and all damages awarded herein be trebled pursuant to 15 U.S.C. § 1117(a) and HRS §480-13.

8.    Punitive damages in an amount commensurate with the egregious nature of the acts of Defendant Lee and the need to deter future similar conduct.

9.    Attorneys' fees, costs and expenses incurred in this action.

10.    Prejudgment and post-judgment interest.

11.     Grant such other and further relief, in law or equity, as this Court may

deem just and proper.

DATED:      Honolulu, Hawaii, <u>December 21, 2020</u>.


                          /s/ Michael L. Lam
                         MICHAEL L. LAM
                         HARRISON K. GOO
                         Attorneys for Plaintiff
                         **RENEAU C. KENNEDY, Ed.D**