IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RENEAU C. KENNEDY, Ed.D, | Case No. 20-cv-563-DKW-KJM |
| Plaintiff, | **ORDER (1) PARTIALLY GRANTING SUMMARY JUDGMENT IN PLAINTIFF'S FAVOR ON COUNTS II AND VI, (2) DENYING SUMMARY JUDGMENT ON COUNT V, AND (3) GRANTING INJUNCTIVE RELIEF** |
| vs. | |
| VEE LEE aka VOEUTH LAY, JOHN DOES 1-15; JANE DOES 1-15; DOE ALIASES 1-100, | |
| Defendants. | |

Plaintiff Reneau C. Kennedy, Ed.D, ("Kennedy") is a forensic psychologist and court-appointed custody evaluator who testified adversely to Defendant Vee Lee ("Lee") in a state custody matter in 2019. Lee has since launched an online smear campaign intended to destroy Kennedy's reputation and cause her emotional suffering. For instance, Lee has secured and created web domains using Kennedy's name to spread disparaging information about Kennedy.

On December 21, 2020, Kennedy filed suit, alleging that Lee's actions constitute, *inter alia*, a violation of the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (Count II), deceptive trade practices in violation of the State Unfair and Deceptive Trade Practices Act, Haw. Rev. Stat. § 480-2 (Count V), and federal common law trademark infringement (Count VI).

1

Kennedy now moves for summary judgment on these three counts and asks the Court to order Lee to transfer ownership of the germane domain names and social media accounts (listed below) to Kennedy.

| | |
|---|---|
| reneaukennedy.com | Instagram @reneaukennedy |
| drreneaukennedy.com | Instagram @portlockpredator |
| portlockpredator.com | Facebook @drreneaukennedy |
| | Twitter @drreneaukennedy |

On Counts II and VI, the Court partially grants summary judgment in Kennedy's favor because Lee's actions, with regard to the domain names and social media accounts that incorporate Kennedy's name, constitute cybersquatting and common law trademark infringement.  The Court denies summary judgment with regard to the "Portlock predator" accounts because Kennedy does not own that moniker.

On Count V, the Court denies summary judgment because Kennedy has not shown that she is a "consumer" under the statute with standing to sue for deceptive trade practices.  *See* Haw. Rev. Stat. § 480-1–2.

## **LEGAL STANDARD**

A court must grant a motion for summary judgment if, when viewed in the light most favorable to the non-moving party, the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

2

## RELEVANT UNDISPUTED FACTUAL BACKGROUND

Kennedy has been a clinical and forensic neuropsychologist practicing under the name "Dr. Reneau Kennedy" since 1994.[1]  CSF ¶¶ 1, 4.[2]  Since 2006, she has served as an expert witness and independent court examiner for sanity panels and custody evaluations for Hawai'i state courts.  *Id.* ¶ 2.

On June 14, 2019, Kennedy was appointed as custody evaluator in the matter *Vee Lee v. Scott Alan Jones*, Case No. FC-D No. 19-1-0041, in the Family Court of the First Circuit, State of Hawai'i.  *Id.* ¶ 6.  Pursuant to that appointment, Kennedy conducted psychological evaluations of Lee, Scott Jones, and their three children.  *Id.* ¶ 7.  Kennedy issued a custody evaluation report and testified as an expert witness in the matter on August 22, 2019.  *Id.* ¶ 7; Dkt. No. 56 at 3.  The Family Court subsequently issued an order awarding temporary sole legal and physical custody of the three children to Jones on September 23, 2019.  CSF ¶ 8; Complaint ¶ 20, Dkt. No. 1; First Amended Answer ("FAA") ¶ 20, Dkt. No. 14.

---

[1]Kennedy registered her name, Dr. Reneau Kennedy, as a Service Mark with the United States Patent and Trademark Office on December 28, 2021.  CSF ¶ 3.

[2]Because Lee has neither filed a memorandum opposing summary judgment, nor a response to Kennedy's Concise Statement of Facts ("CSF"), Dkt. No. 57, the facts advanced by Kennedy are assumed to be true.  *See* Local Rule 56.1(g) ("For purposes of a motion for summary judgment, material facts set forth in the movant's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party.").

Following the Family Court decision, in October 2020, Lee began sending emails to Kennedy, threatening to ruin Kennedy's reputation via online marketing tactics. *Id.* ¶¶ 10–13.  For example, on October 26, 2020, Lee wrote:

> You're a predator.  You're the predator of Portlock.[3]  I will not let you go down on record with your lies without me disputing it.  By the time I'm done, you will be known as the Portlock Predator.  It has a ring to it.  And I'm really good at marketing.  You're a vile woman who should not be practicing and I won't rest until that is known.

*Id.* ¶ 10.  On October 27, 2020, Lee sent an email with the subject line, "ReneauKennedy.com," informing Kennedy that the domain names drrneaukennedy.com and portlockpredator.com were "registered and ready to be used," and warning, "Don't worry, I'm in no rush."  *Id.* ¶ 12.  On October 27, 2020, Lee sent a second email to Kennedy with the subject line, "Good news," stating:

> I wanted to share some good news with you!  In just 5 minutes, I was able to secure all the necessary social media accounts to accompany the domains to show more credibility and for branding purposes.
>
> I am using what I have to get the truth out… and I won't rest until you are done.  You act as if there's no God.
>
> But better news for you is this will be my last message to you… hopefully the next time you hear about this should be from someone else… or better yet, from everyone else!
>
> It'll take time… but it will happen.  Promise.

_____

[3]Portlock is a neighborhood on O'ahu, east of Honolulu, where Kennedy apparently resides.

*Id.* ¶ 13.

Around the same time, Lee, in fact, registered the domains reneaukennedy.com, drreneaukennedy.com, and portlockpredator.com, *id.* ¶ 9, and created a website at reneaukennedy.com. *Id.* ¶ 14. Lee posted her goal for the website as follows:

> [T]o get my children back by having [Kennedy's] report and testimony thrown out as evidence and for [Kennedy] to be held accountable for obstructing family court justice by committing perjury. She couldn't [*sic*] be allowed to continue practicing and tearing families apart. She caused my children and me a lot of damages, emotionally and spiritually.

*Id.*

Lee also opened social media profiles on Instagram, Facebook, and Twitter. The Instagram profile @portlockpredator is private, but it includes a photo of Kennedy with red horns and a mustache drawn on, and the caption, "Dr. Reneau Kennedy is a Racist. Dr. Reneau Kennedy is a lying [woman] & children hating 'psychologist' who defends murderers. See for yourself, Google search 'State v. Bradley Kryla.'" *Id.* ¶ 21. The Instagram profile @reneaukennedy is also private, but the caption states, "THEY STOLE MY BABIES. Dr. Reneau Kennedy of Portlock Hawaii is a racist [woman] & children hating, egg shaped 'psychologist,'" *id.* ¶ 22, and it links to Lee's reneaukennedy.com website. *Id.* ¶ 20. The Facebook profile @drreneaukennedy includes the profile name "Reneau Kennedy," the same photo of Kennedy with red horns and mustache, and an "About" section with

similar remarks.  *Id.* ¶ 23.  The Twitter profile @drreneaukennedy includes the same photo and states, "Dr. Kennedy is married to a prominent lawyer and is well connected in Hawaii.  She is dishonest and evil.  And will defend Murderers," and links to reneaukennedy.com.  *Id.* ¶ 24.

As of January 20, 2021, another of Lee's websites, hippiesandhousewives.com, was linked to reneaukennedy.com.  *Id.* ¶ 25.

Potential Kennedy clients have observed the reneaukennedy.com website and the Instagram, Facebook, and Twitter accounts, questioning the webpages' origins.  *Id.* ¶ 26.

## **RELEVANT PROCEDURAL BACKGROUND**

On December 21, 2020, Kennedy filed a Complaint alleging the following Counts: (i) violation of Cyberpiracy Protections for Individuals, 15 U.S.C. § 8131; (ii) violation of Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125; (iii) Federal Trademark Infringement; (iv) Federal Unfair Competition; (v) State Unfair and Deceptive Trade Practices in violation of Haw. Rev. Stat. § 480-2; (vi) Common Law Trademark Infringement and Unfair Competition; (vii) False Light; and (viii) Defamation.  *See* Complaint, Dkt. No. 1.

On January 29, 2021, Lee answered, denying liability but admitting many of the key factual allegations and promising to continue those activities in order to "prevent other families from being torn apart and especially harming children."

FAA ¶ 101; *see also ibid.* ¶ 48 (asserting her belief that "stating opinion and truths about Plaintiff is a protected activity, even though it's unpleasant").[4]

On March 23, 2022, Kennedy filed the instant Motion for Partial Summary Judgment (the "Motion") on Counts II, V, and VI.  Dkt. No. 56.  Lee, who is proceeding *pro se*, did not oppose the Motion by the briefing deadline, April 29, 2022, *see* Dkt. No. 59, nor since.  This Order follows.

## DISCUSSION

**I.    Summary judgment is granted on Count II as to the domains reneaukennedy.com and drreneaukennedy.com but not portlockpredator.com.**

The Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("Section 1125(d)") provides, in relevant part:

(d) Cyberpiracy prevention

(1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if . . . that person—

(i)    Has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section;                                                                        and

(ii)   Registers, traffics in, or uses a domain name that—

(I)    In the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark . . . .

---

[4] Lee also asserts counterclaims against Kennedy for (i) Declaratory Judgment of Non-Infringement and (ii) Abuse of Process.  *See* FAA at 38–42.

To prevail under this section, a plaintiff must prove that "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218–19 (9th Cir. 2010). The following nine factors may be considered in determining whether the defendant acted "with bad faith intent to profit":

(1)     The trademark or other intellectual property rights of the person, if any, in the domain name;

(2)     The extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(3)     The person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(4)     The person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(5)     The person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(6)     The person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(7)     The person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(8)     The person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(9)     The extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. § 1125(d)(1)B(i).  This list of nine factors is not exhaustive.  *Id.*  "Bad faith intent . . . shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful."  15 U.S.C. § 1125(d).

Here, Kennedy is entitled to summary judgment because there is no genuine dispute of material fact that the three liability elements have been met as to two of the domains at issue.  *First*, Lee registered, trafficked in, or used the domain names reneaukennedy.com, drrneaukennedy.com, and portlockpredator.com, CSF ¶¶ 9, 28, and then she created a website at reneaukennedy.com, linking it to several social media accounts and other websites.  *Id.* ¶¶ 14, 20, 23–32.

*Second*, the domain names reneaukennedy.com and drreneaukennedy.com are identical to a protected mark owned by the plaintiff—her name, Dr. Reneau Kennedy.  *See* 15 U.S.C. § 1125(d) ("[A] personal name . . . is protected as a mark under this section . . . .").[5]  Kennedy has used her name professionally since 1994 and has a strong interest in protecting its reputation and goodwill.  *See* CSF ¶ 1.

*Third*, in light of the nine permissive factors and other relevant circumstances, there is no genuine dispute of material fact that Lee acted with bad faith intent to profit from Kennedy's mark.  Lee does not claim to have any prior connection to the name.  *See* Section 1125(d)(1)(B)(i) (Factors 1, 2, 3 and 8).  Rather, Lee adopted it for the express purpose of tarnishing Kennedy's name by diverting Kennedy's potential online clients to Lee's own disparaging sites, thereby gaining leverage over Kennedy.  *See id.* (Factors 4 and 5); CSF ¶¶ 10, 12–14 (Lee's admitted goal in creating her online presence was, "to get my children back by having [Kennedy's] report and testimony thrown out as evidence and for [Kennedy] to be held accountable").  Moreover, exactly as Lee intended, prospective Kennedy clients have viewed reneaukennedy.com and questioned the site's origin.  *See* 1125(d)(1)(B)(i) (Factor 5); CSF ¶ 26.  Finally, even though Lee believes she has a constitutional right to use these particular domains to "stat[e her]

---

[5]By contrast, Kennedy does not own the moniker "Portlock predator," nor has she provided any evidence of owning any mark remotely similar.

opinions" about Kennedy, *see, e.g.*, FAA ¶¶ 58–59, there are no reasonable grounds for that belief.  *See* Section 1125(d).  Thus, Lee acted with bad faith intent to profit from the domains that reflect Kennedy's name, and summary judgment is therefore granted as to those domains.

## II.     Summary judgment is denied on Count V for lack of standing.

Haw. Rev. Stat. § 480-2 ("Section 480-2") prohibits two distinct activities: unfair methods of competition and unfair or deceptive trade practices.  Kennedy's Count V asserts only the latter.  *See* Complaint ¶ 126 ("Lee's conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of HRS § 480-2."); Motion at 14 (similar).

Actions for unfair or deceptive trade practices are limited to "consumer[s]" and certain government officials.  "No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section." Haw. Rev. Stat. § 480-2(d).  A "consumer" is "a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment."  Haw. Rev. Stat. § 480-1.[6]

---

[6]More completely, a claim of deceptive trade practices requires a plaintiff to show: "(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material." *Courbat*

Kennedy has not explained how she fits this definition. She has not asserted that she has purchased, attempted to purchase, or been solicited to purchase anything. Nor is it evident how she has committed anything to a "personal investment" implicated by Lee's conduct. Because Kennedy has not demonstrated that she possesses the "consumer" status necessary to sue for unfair or deceptive trade practices under Section 480-2, summary judgment on Count V is denied.

## III.    Summary judgment is granted on Count VI.

To prevail on a claim of common law trademark infringement, a plaintiff must demonstrate (1) ownership of a protectable mark and (2) a likelihood of consumer confusion between that mark and the allegedly infringing mark. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985).

To own a mark, a person must be the first to use the mark, *Brookfield Commc'ns, Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999), and such use must be ongoing. *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 762 (9th Cir. 2006); *see also Pacific Supply Co-op. v. Farmers Union Cent. Exch., Inc.*, 318 F.2d 894, 905 (9th Cir. 1963) (explaining that trademark ownership is not dependent on official registration of the mark, but rather it "arise[s] under common law from prior exclusive appropriation or adoption and use").[7]

---

*v. Dahana Ranch, Inc.*, 141 P.3d 427, 435 (Haw. 2006) (internal quotation marks and citation omitted).

[7] *See also United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97–98 (1918) ("[T]he right to a particular mark grows out of its use . . . ; its function is simply to designate the goods as the

In deciding whether there is a likelihood of confusion, a court may consider
eight non-exclusive factors: (1) the strength of the mark; (2) the proximity or
relatedness of the goods; (3) the similarity of the marks; (4) whether there is
evidence of actual confusion; (5) the degree to which the marketing channels used
by the parties overlap; (6) the type of goods and the degree of care likely to be
exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8)
the likelihood of expansion of the product lines.  *E. & J. Gallo Winery v. Gallo
Cattle Co.,* 967 F.2d 1280, 1290 (9th Cir. 1992) (citation omitted).

Here, there is no genuine dispute of material fact that Lee has infringed on
Kennedy's common law trademark interest in her own name.  *First*, Kennedy owns
the mark Dr. Reneau Kennedy; she clearly has a senior and ongoing claim to her
name, having used it professionally since 1994, as compared to Lee's
appropriation, which began in 2020.

*Second*, there is a high likelihood of consumer confusion.  Lee has coopted
Kennedy's name for the express purpose of directing consumers to Lee's own
websites in order to proliferate her own message in place of Kennedy's.  Further,
not only are Lee's actions *designed* to confuse Kennedy's potential online

---

product of a particular trader and to protect his good will against the sale of another's product as
his . . . .").

customers, but she has *succeeded* in that endeavor, at least to an extent.  *See* CSF ¶ 26.  Accordingly, summary judgment is granted.

## CONCLUSION

Consistent with the foregoing, summary judgment as to Counts II and VI is GRANTED IN PART.  Summary judgment as to Count V is DENIED.

The Court hereby ORDERS Lee (1) to immediately cease use of the domain names reneaukennedy.com and drreneaukennedy.com and transfer ownership of those domains to Kennedy[8]; (2) to immediately cease use of and delete the following social media accounts: Instagram @reneaukennedy, Facebook @drreneaukennedy, and Twitter @drreneaukennedy; and (3) to immediately cease use of the marks Reneau Kennedy, Dr. Reneau Kennedy, and/or any confusingly similar name on the Internet.  *See Brookfield*, 174 F.3d at 1047 (holding that the senior user of a domain name trademark has a right to enjoin junior users from using confusingly similar marks in the same market and reversing district court's denial of a preliminary injunction).

The Court will not tolerate terrorism of court-appointed personnel for work performed in service of the court by parties who are not satisfied with judicial

---

[8]If these domain names were purchased from a website builder such as Squarespace, where transfer of ownership is not possible, Lee is ordered to immediately delete the web content on those domains.

outcomes.  Accordingly, further relief may be warranted, particularly if Lee's

compliance with this Order is not immediately forthcoming.

IT IS SO ORDERED.

DATED: May 10, 2022 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

*Reneau C. Kennedy, Ed.D., vs. Vee Lee aka Voeuth Lay et al*; Civil No. 20-00563
DKW-KJM; **ORDER (1) PARTIALLY GRANTING SUMMARY
JUDGMENT IN PLAINTIFF'S FAVOR ON COUNTS II AND VI, (2)
DENYING SUMMARY JUDGMENT ON COUNT V, AND (3) GRANTING
INJUNCTIVE RELIEF**